# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **DARRYL WENDELL POYER** | **CIVIL ACTION NO. 06-0792** |
| **VS.** | **SECTION P** |
| **RICHARD STALDER, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on March 20, 2006[1] by *pro se* plaintiff Darryl Wendell Poyer. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections [LDOC]. He is incarcerated at the Caldwell Parish Corrections Center, Grayson, Louisiana, but complained of events which occurred while he was incarcerated at the East Carroll Detention Center (ECDC) from August 2005 – January 2006. He named LDOC Secretary Richard Stalder, ECDC Warden John Gunter, Assistant Warden Ronnie Harris, Captain Danny Frazier, and Lieutenant Laura Johnson as defendants. He prayed for transfer to a "half-way house," reinstatement to work release, compensatory damages, a clear disciplinary record, and the termination of all parties involved.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

## STATEMENT OF THE CASE

---

[1] Plaintiff filed his original complaint in the United States District Court for the Eastern District of Louisiana. The complaint was transferred to this court shortly thereafter. [docs. 4 and 5]

1

Prior to August 18, 2005, plaintiff was an LDOC inmate at the Riverbend Detention Center in Lake Providence, Louisiana. On that date he was transferred to the ECDC. Upon his arrival, plaintiff applied for work-release. Plaintiff claimed the ECDC "... had knowledge and was fully aware ..." of his asthma on that date and that he indicated as much on his work-release application.

Lt. Johnson submitted plaintiff's request to the LDOC. According to plaintiff, Lt. Johnson "...submitted false medical information ... about [his] medical history, by stating [he] was ok and have no meds..." even though plaintiff was taking blood pressure medication and receiving some unspecified treatment for asthma. [doc. 1-1, p. 8]

Plaintiff was eventually accepted for the work-release program and assigned to the Howard Cotton Gin. On October 26, 2005, plaintiff suffered an asthma attack. He was taken to a hospital where he remained for five hours while he was administered oxygen and asthma treatments.

On October 27, 2005, while in an ECDC dormitory, plaintiff experienced another "attack." He was tended to by a "unit doctor" who provided treatment which brought the condition under control. [*id*., p. 9]

Later that day he was advised by Warden Gunter that he was being removed from the work-release program because he quit his assigned job. Plaintiff advised Gunter that he did not quit the job; he advised the Warden that he was forced to leave because of the asthma attack. According to the plaintiff, Captain Frazier then stated, "You told DOC ... I knew you had asthma." Plaintiff responded, "I said you should have known since you are over work-release." Warden Gunter then stated, "You should have told us that you have asthma when you submitted for work release." Plaintiff told Gunter that he did and the Warden replied, "... we get so many request forms that we [don't] have time to read them all..." Plaintiff advised the Warden that if

2

he removed plaintiff from the work-release program because of his medical condition, that such action would be discriminatory. The Warden then advised plaintiff that the region around ECDC was an agricultural region and that plaintiff would not be able to do the type of work required of him; he also advised that there were only a few jobs that would not interfere with his asthma. The Warden asked Captain Frazier to put plaintiff to work at the hospital. Frazier advised that all hospital jobs were filled. The Warden then asked Frazier to find plaintiff work. [*id.*, pp. 10-11]

On November 1, 2005, plaintiff submitted an informal request to the Warden for either a permanent job or a transfer. [*id.*, p. 11]

On November 2, 2005, plaintiff submitted an informal request to Captain Frazier for either permanent work or a transfer. [*id.*]

On November 3, 2005, plaintiff asked Frazier for the "Exxon Position," and Frazier told him, "I'll see." [*id.*, p. 12]

On November 7, 2005, plaintiff spoke with the Warden and asked to be assigned to the John Deere store. The Warden directed Captain Frazier to place plaintiff in that position. [*id.*]

On November 14, 2005, Frazier assigned plaintiff to work at the Southern Produce Plant. Plaintiff worked until November 18. On November 21, 2005, Southern Produce requested workers and plaintiff worked at that assignment until November 22, 2005. [*id.*]

On November 21, 2005, plaintiff filed a grievance against Warden Gunter, Capt. Frazier and Lt. Johnson because of their failure to either find plaintiff a permanent job or transfer him. When he received no response to this grievance, plaintiff began to experience "mental stress and mental anguish due to the consent [sic] neglect and unprofessionalism and not being able to have the privilege the other offenders had of working, and watching every day other offenders going to work and I'm the only one lefted [sic] not to work." [*id.*, p. 13]

On December 1, 2005, Capt. Frazier summoned plaintiff into his office to talk to him

about work-release. Plaintiff advised Frazier that the job he was assigned to lasted only 7 days. While he was speaking to Frazier plaintiff observed a copy of the November 21 grievance on his desk. [*id*., pp. 13-14]

On December 2, 2005, plaintiff was summoned to Lt. Johnson's office to sign work-release papers. Plaintiff would not sign the papers because he did not understand them. Johnson had plaintiff removed. Plaintiff asked to speak to the Warden. Lt. Johnson advised the Warden that plaintiff refused to sign the work-release papers. Plaintiff advised that he did not understand. The Warden then explained that plaintiff must state whether or not he had a medical condition that would prohibit him from participating in the work-release program. The Warden advised plaintiff that he should indicate that his medical condition would prohibit him from working, but the plaintiff refused to make such a statement and instead signed the form indicating that he had no medical problems that would interfere with his job. [*id*., p. 14]

The Warden again advised Frazier to find plaintiff a job that would not interfere with his asthma. Frazier advised that future employment was unlikely given plaintiff's work history to date.

On December 15-16, 2005, plaintiff worked again at Southern Produce.

On December 19, 2005, plaintiff asked Warden Gunter for a job at the hospital. On the same date, plaintiff filed another grievance complaining of the administration's failure to respond to his November 21, 2005, grievance. [*id*.]

Later on December 19, plaintiff was again summoned to the intake room. Assistant Warden Harris advised plaintiff that he was being removed from the work-release program; Capt. Frazier advised plaintiff that he was being written-up for having an unprofessional relationship with a co-worker and for filing grievances; Lt. Frazier advised, "Since you wrote the Captain up, it's our turn to write you up." Plaintiff was then placed in administrative segregation

4

at 4:45 p.m. At 11:30 p.m. he was questioned by Captain James (the Disciplinary Captain) about a co-worker and some clothing. Plaintiff advised Captain James that the co-worker was a friend. Plaintiff stated that he was unaware that he was prohibited from meeting people. Capt. Frazier advised Capt. James that he believed plaintiff did not know about the regulation. [*id*., p. 15-18]

On December 24, plaintiff wrote a seven page grievance and a ten page complaint directed to Warden Gunter. Lt. Carter read the grievance and complaint and later verbally berated plaintiff in front of other inmates. This caused plaintiff mental stress and anguish and fear. [*id*., p. 19]

On December 27, plaintiff re-wrote the grievances and complaint and filed an additional grievance against Lt. Carter. On the same day, Capt. Frazier advised plaintiff that he was given a write-up for nine days in lock-down. [*id*., p. 21]

On the same date plaintiff sent an administrative remedies procedure grievance to Secretary Stalder requesting a transfer.

On January 3, 2006, plaintiff requested a copy of the 7 page complaint submitted to the Warden. He also sent out two more ARPs to Secretary Stalder requesting a transfer. [*id*., p. 22]

On January 5, 2006, plaintiff spoke to Captain Frazier about being released from lock-down. Frazier advised plaintiff that it was up to the Warden.

On January 10, 2006, plaintiff was given fifteen days credit for time served in lock-down. Plaintiff was advised that the disciplinary infractions were communicated to LDOC who advised the prison administration to conduct an in house investigation and hearing. Plaintiff complained that the disciplinary hearing was being conducted in violation of the time limits provisions. Plaintiff was advised that the limitations did not apply since the matter was under investigation.

On January 10, plaintiff also complained to the Warden and the doctor that the smoke and dust in lock-down was affecting his asthma.

On January 14, he experienced another asthma attack. He was taken to the hospital and treated for 3 hours. [*id.*, pp. 22-26]

Plaintiff signed his civil rights complaint on January 16, 2006. [*id.*, p. 28] His cover letter which accompanied the filing of the complaint was dated January 23, 2006, and indicated that he was by that date incarcerated at the Caldwell Detention Center, Grayson, Louisiana. [*id.*, p. 2]

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

6

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In addition, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint is clear and concise. Plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that plaintiff has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## 2. Plaintiff's Claims for Relief

Plaintiff contends that the defendants are liable because of "endangerment," "mental anguish," "mental stress," "intimidation," "unprofessionalism," "personal vendetta," "bias," "persecution and punishment," "deliberate indifference," "unnecessary and wanton infliction of pain," "cruel and unusual punishment," and "threats through vindictiveness." [doc. 1-1, paragraph IV, p. 6] When he filed his complaint, he prayed for a transfer to a half-way house, reinstatement of work-release, compensation for his removal from work-release, a clear disciplinary record, the termination of all parties, and monetary damages. [*id.*, paragraph V]

Read liberally, plaintiff's claims fall into three broad categories –

(1) Plaintiff claims that the conditions of his confinement amounted to cruel and unusual

punishment in violation of the Eighth Amendment;

(2) Plaintiff claims that he was deprived of a property and/or liberty interest (participation in the LDOC's work-release program) without due process of law in violation of the Fourteenth Amendment; and,

(3) Plaintiff claims that he was wrongfully convicted and punished in a prison disciplinary proceeding which also violated his rights to due process as guaranteed by the Fourteenth Amendment.

### 3. Conditions of Confinement

In general plaintiff complains of the "conditions of confinement" during his incarceration at the ECDC between August 2005 - January 2006. In particular he complains about the conditions at his first work-release assignment at the Howard Cotton Gin and, of the conditions of confinement experienced during his stay in the ECDC lock-down. He implies that the conditions of confinement at these particular places triggered the onset of asthma attacks.

Harsh "conditions of confinement" may constitute cruel and unusual punishment and thus violate a prisoner's rights under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1985) quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir.1987).

Conditions of confinement claims are analyzed under a "totality of the conditions test." *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir.1990); *Jackson v. Cain,* 864 F.2d 1235, 1245 (5th Cir. 1989). In determining whether a particular condition of confinement is cruel and unusual under the Eighth Amendment, the courts should determine whether the condition manifests a "wanton and unnecessary infliction of pain," or whether the condition is "grossly disproportionate to the severity of the crime warranting imprisonment," and finally, whether the condition results in the deprivation of the "the minimal civilized measure of life's necessities."

*Wilson v. Lynaugh*, 878 F.2d 846, 848 quoting *Rhodes v. Chapman*, 452 U.S. at 346-47.

Thus, in order for the condition to constitute cruel and unusual punishment, conduct or conditions must involve more than ordinary lack of due care for the prisoners' interest or safety. *Whitley v. Albers*, 474 U.S. 312, 319 (1986); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th Cir.1987). After all, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock," *Whitley*, 475 U.S. at 319; and, "... some mental element must be attributed to the inflicting officer before it can qualify" as cruel and unusual punishment in violation of the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Thus, when challenging a condition of confinement, a prisoner must show that the defendants have exhibited "deliberate indifference." *Id.* at 303. Mere negligence does not satisfy this standard. *Id.* In order to prevail, the complaining prisoner must show that he was forced to suffer an extreme deprivation of "minimal civilized measure of life's necessities." *Id.* at 304.

Further, deliberate indifference has both objective and subjective components. *Davis v. Scott*, 157 F.3 1003, 1006 (5th Cir.1998), citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Supreme Court has articulated the following standard: "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; <u>the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.... But an official's failure to alleviate a significant risk which he <u>should have perceived</u>, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of

9

punishment." *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); see *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir.1995) ( to prevail, the plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. *Horton*, 70 F.3d at 401, citing *Farmer*, 114 S.Ct. at 1977.) (emphasis supplied)

Plaintiff was incarcerated at ECDC for a period of almost six months. During the period of time, he complained of three asthma attacks – two occurring on consecutive days in October, these two were apparently triggered by plaintiff's contact with substances at his first work-release assignment, the Horton Cotton Gin, and one in January triggered by the conditions of the ECDC lock-down cell. With regard to these three events, plaintiff simply has not shown deliberate indifference on the part of the defendants.

To the contrary, on each occasion, plaintiff was provided prompt and effective medical care and attention. He was treated for five hours following his initial episode at the cotton gin on October 26, 2005; he was again treated promptly and effectively following the episode on October 27, 2005 which occurred while he was confined to dorm 3 at ECDC. Finally, he was treated promptly and effectively following the third episode which occurred during his stay in lock-down.

As previously stated, in order to prevail, the plaintiff must allege and then prove not only that he was incarcerated under conditions "posing a substantial risk of serious harm" <u>but also</u> that the defendants' state of mind was one of "deliberate indifference" to his health or safety. *Horton*, 70 F.3d at 401, citing *Farmer*, 114 S.Ct. at 1977. Plaintiff has not shown this subjective component; indeed the facts recited by plaintiff do not fairly indicate that the defendants actively desired his suffering. On each occasion that plaintiff suffered an attack, he was, by his own

10

admission, treated promptly, professionally, and adequately by the prison staff and the staff of the E.A. Conway Hospital.

Plaintiff faults the defendants for his first job assignment, but even he falls short of accusing the defendants of actively desiring the harm which befell him. Clearly, at best, this was an instance where the prison administration "should have known" that plaintiff was vulnerable to the conditions at the cotton gin. Nevertheless, that the defendants "should have known" of the possible harm is insufficient to warrant the imposition of §1983 liability. *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

Further, with regard to the second attack, plaintiff admits that this second attack occurred while he was in the regular prison dorm and does not suggest that the conditions of that particular place were responsible for the onset of his symptoms.

Finally, with regard to the third attack, while it is true that plaintiff complained to Warden Gunter about the conditions of lock-down, that complaint came on January 10. According to the plaintiff, the Warden agreed to make a special accommodation for him. When the third asthma attack occurred on January 14, 2006, plaintiff received prompt and effective attention. Within a matter of days, he was moved from the offending area to a place of greater safety.

In short, plaintiff has not shown the necessary deliberate indifference on the part of the defendants. His conditions of confinement claims are frivolous and dismissal as such is recommended.

4. Liberty or Property Interest – Work Release

In order to hold any of the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. See *Hessbrook v. Lennon*, 777 F.2d 999, 1005 (5th Cir. 1985).

Plaintiff claims that the defendants violated his rights to equal protection and due process when they unlawfully deemed him ineligible to participate in Louisiana's work-release program.

The Fourteenth Amendment guarantees that neither life, liberty nor property may be denied without due process of law. Plaintiff has neither a liberty nor property interest in the work release program and therefore his due process claims are frivolous. La. R.S.15:1111, the statute establishing the work release program, provides in part, "The Department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC whom it must put on work release. In short, the Fifth Circuit held that "...La. R.S.15:1111 <u>does not create a liberty interest subject to the Due Process Clause</u>." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff may also claim that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, his argument also lacks an arguable basis in law and fact. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of <u>entitlement</u> to it." *Id.* (emphasis supplied). Thus, the "property

12

interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). In any event, the Fifth Circuit has also held that prisoners have no property interest their work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995).

### 5. Due Process – Prison Disciplinary Proceeding

Plaintiff was apparently convicted of a disciplinary rule violation and as a result, he was sentenced to serve a period of time in lock-down or administrative segregation. To the extent that he maintains that his due process rights were violated by the defendants, he fails to state a claim for which relief might be granted. In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), the ambit of a prisoner's potential Fourteenth Amendment due process liberty claims has been dramatically narrowed. A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).

Plaintiff lost no good time by virtue of the allegedly inadequate or unfair disciplinary proceedings which at worst resulted in lock-down confinement, and therefore, he has no federally protected due process rights in connection with the proceedings. This aspect of plaintiff's claim against the defendants lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490

13

U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

6. Conclusion

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in Chambers, Monroe, Louisiana, this 26th day of June, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

14